---

### In re RUPP et al.

(Supreme Court, Appellate Division, Fourth Department. October 7, 1898.)

1. SUNDAY BALL PLAYING.
 Sunday ball playing is a misdemeanor, under Pen. Code, § 265, prohibiting public sport and all noises disturbing the peace on Sunday.

2. OFFICERS—REMOVAL—DISCRETION.
 It is within the discretion of the supreme court to remove police commissioners from office for refusal to stop Sunday ball playing, where they acted in good faith, and without intention to violate the law.

Application for the removal of Charles A. Rupp and James E. Curtiss as police commissioners of the police board of the city of Buffalo. Denied.

June 7, 1898, Lodowick H. Jones, a citizen elector and taxpayer, and an owner of real property in the city of Buffalo, presented to the appellate division of the Fourth department of the supreme court a petition, as authorized by section 184 of the charter of Buffalo, setting forth that Charles

A. Rupp and James E. Curtiss were police commissioners of the city of Buffalo, and that they, together with the mayor of said city, constituted the board of police commissioners of the city, the mayor being such ex officio; that the said Rupp and Curtiss had been such commissioners since May 1, 1897; that they constituted a majority of the board of police commissioners, and were responsible for the due and proper discharge of the duties of the said board; that they had control of the police force of the city; that during the spring and summer of 1897 and 1898, prior to the presentation of the said petition, games of baseball had been played on Sunday on numerous occasions, and at a place called "Franklin Square," in the city, and that an admission fee was charged and received from the people who entered the baseball grounds to witness the said games; that the attention of the police commissioners had been called to these games repeatedly, and that complaints had been made to the superintendent of police and to the police officer in charge of the precinct embracing the said Franklin Square of the playing of such games on Sunday, but that these officers had failed to take proceedings to prevent the same or to arrest offenders; that these facts had been brought to the knowledge of the police commissioners, and charges had been made against the said officers in respect to such games; and that the commissioners had refused to remove said officers, and dismissed the charges without investigation; and that the commissioners had been guilty of malfeasance and misconduct in failing to do their duty in regard to suppressing the baseball playing on Sunday; and six separate and distinct charges of malfeasance in regard to the same were particularly set forth in the said petition. June 9, 1898, the court made an order requiring the said Charles A. Rupp and James E. Curtiss to show cause before the court, on the 17th day of June, 1898, why an order should not be made removing them, and each of them, from the office of police commissioner. June 17, 1898, the petitioner appeared, and the corporation counsel of Buffalo appeared for the police commissioners, and filed an answer to the said petition, among other things denying that the commissioners had been guilty of any malfeasance or misconduct as charged in the petition; and the court ordered that it be referred to William C. Watson, Esq., a counselor of this court, to take proof of the matters set forth in the petition, and that he report the same to this court, with his opinion thereon, on the 26th day of July, 1898. On that day the parties appeared. The report of the referee was presented, containing findings of fact, and stating also the conclusion of the referee that the police commissioners acted in good faith with respect to each and all of the matters complained of, and with no desire or intent to evade any official duty, or to sanction, permit, or condone any criminal offense; and, if they erred in the discharge of such duties, it was an error of judgment only, and not an intentional departure from official duty, and that they ought not to be removed from their offices as police commissioners.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, GREEN, and WARD, JJ.

Lodowick H. Jones, in pro. per.
W. H. Cuddeback, Corp. Counsel, for Police Com'rs.

PER CURIAM.    It clearly appears from the record before us that during the spring and summer of 1897 and 1898, and before the filing of the petition herein, games of baseball were played in the usual manner at Franklin Square, a public place in the city of Buffalo, repeatedly on Sunday; that the police commissioners and police force under their control had knowledge of these facts, and did not suppress the ball playing or make arrests therefor, with a single exception, which will be noted hereafter.    Large crowds attended these games as spectators, from whom an admission fee was collected.    The petitioner called the attention of the police commissioners and the super-

intendent of police and the police captain in charge of the precinct in which the games were played, and demanded that they be suppressed; but the demand was not complied with, whereupon charges were made against the superintendent and the precinct captain, for a violation of duty, to the police commissioners, but they failed to investigate the charges, and dismissed them. The commissioners instructed their subordinates not to arrest those who participated in the baseball playing on Sunday, unless a warrant was issued for their arrest, which the commissioners deemed the proper course to pursue in the matter. It does not appear that warrants were obtained and executed to any extent for the arrest of the ball players, although the petitioner made numerous efforts to obtain such warrants, before various magistrates, without success.

Baseball playing on Sunday is a misdemeanor, and is prohibited by section 265 of the Penal Code, which is as follows:

"All shooting, hunting, fishing, playing, horse racing, gaming or other public sport, exercises or shows, upon the first day of the week, and all noise disturbing the peace of the day, are prohibited."

See People v. Moses, 140 N. Y. 214, 35 N. E. 499.

A peace officer may without a warrant arrest a person for a crime committed or attempted in his presence. Code Cr. Proc. § 177. The police officers, therefore, who were present and witnessed the playing of these games on Sunday, were authorized to arrest the participators in those games without a warrant. The attention of the police commissioners and their subordinates having been called to these games and their expected occurrence on Sunday, it was the duty of the police to attend upon the games, and to suppress them by the arrest of the guilty parties. The police officers could have arrested the offenders, and have taken them before the proper magistrate, to be dealt with as the law provided, the same as in other cases of arrest without warrant for crimes committed in the presence of the officer.

The legislature has authority to protect the Christian Sabbath from desecration by such laws as it may deem necessary, and it is sole judge of the acts proper to be prohibited, with a view to the public peace on that day. Nuendorff v. Duryea, 69 N. Y. 557. Our laws for the observance of the Sabbath are founded upon the command of God at Sinai, that we should "remember the Sabbath Day, to keep it holy." These laws are substantially found in chapter 1 of title 10 of the Penal Code. They aver that the first day of the week, by general consent, "is set apart for rest and religious uses," and forbid those acts "which are serious interruptions of the repose and religious liberty of the community." They prohibit all labor on Sunday except works of necessity or charity. They close the courts and public offices on that day, and they secure the protection and sanctity of religious meetings. The experience of mankind demonstrates that the setting apart of one day in seven is not only conducive to the spiritual welfare of the people, but it is essential to the rest and recuperation which every one needs at stated intervals from the cares, burdens, and anxieties of life. The Sabbath, therefore, is the result of the highest dictates of public policy, as well as of religious duty. The Sabbath existed before constitutions or statutes, and was sanctioned by the common law.

The question remains whether these commissioners should be removed from office. Considerations, which the evidence fairly presents, urged in their behalf, are that; in the exercise of their best judgment, they concluded that the proper way to bring the offenders at the baseball games to justice was by the more deliberate proceeding by warrant, and they advised that proceeding; that early in the season of 1897 an arrest was made of a person violating the Sunday law in regard to baseball playing; the party arrested was taken before a police magistrate of the city, an officer of large experience, and he discharged the defendant, holding that he had not been guilty of a crime; and that the commissioners consulted this magistrate in the year 1898, in regard to further arrests, and the magistrate informed them that he would not hold persons engaged in playing baseball on Sunday guilty of any crime; that they did not formally investigate the charges against the precinct captain and the superintendent of police for the reason that they understood all about the matter, and an investigation was unnecessary in order to determine whether these officers should be removed from office, and, as to the superintendent of police, the charges were dismissed as against him upon the advice of the corporation counsel of Buffalo, who, under section 163 of the charter of that city, was the law officer of the board of police. The referee has found that the police commissioners, in respect to the matters charged against them, acted in good faith, and without any intention to violate the law. Another consideration urged in their behalf is that, for a long time prior to the year 1897, baseball had been played in the city of Buffalo on Sunday, without complaint from the people, or any criminal proceeding taken by the authorities, and without any manifest disturbance of the public peace. The petitioner urges with much force that these intelligent police commissioners should have known the law so plainly written in the statutes, and observed it. It is true as a general proposition that ignorance of the law does not excuse its violation; but it is discretionary with the court acting upon the whole case, and in view of all the circumstances of this case, whether to remove these officers at the present time. We have reached the conclusion not to make the removal at present, but to permit them to continue in office, with the plain admonition as to their duties in the future, and with the law clearly laid down by this court for their guidance. This conclusion works no condemnation of the course of the petitioner. His efforts to bring this matter to the attention of the courts and the public meet our approval; and, as his actions in the matter will doubtless result in the enforcement of a salutary law in the city of Buffalo, his efforts in that behalf will be properly appreciated.

Prayer of the petitioner for the removal of the police commissioners denied, on condition that the commissioners pay the costs of the proceedings.